UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
CELLULAR TOWERS OPERATED BY
AT&T WIRELESS, SPRINT,
T-MOBILE, AND VERIZON

Case No. 3:19mj117(RMS)

**Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF
### APPLICATION FOR SEARCH WARRANTS

I, Kevin Mileto, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for search warrants for information associated with cellular towers operated by AT&T Wireless, Sprint, T-Mobile, and Verizon, all of whom are wireless telephone service providers. The information to be seized is described in the following paragraphs and in Attachment A, and involves all cell site activations for cellular towers operated by AT&T Wireless, Sprint, T-Mobile, and Verizon (collectively, "the Service Providers") providing service to a particular location and for particular dates and times. This affidavit is made in support of an application for search warrants under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require the Service Providers to disclose to the government copies of the information further described in Attachment B with respect to the cellular towers providing service to the location identified in Attachment A and for the dates and times set forth in Attachment A.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). I have been employed as a Special Agent with the ATF

since December 2013. Prior to that, I was a police officer in Fairfax County, Virginia, from approximately 2004 to 2006. I then served as served as a Deputy Sheriff in the Stafford County Sheriff's Office in Virginia until 2010. As a Special Agent with ATF, I have participated in numerous investigations of violations of federal laws, including firearms offenses, narcotics offenses and in arson investigations. I have conducted or participated in surveillance, the execution of search and arrest warrants, interviewing of individuals, and the debriefing of informants and cooperating witnesses.

3. I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for violations of federal law.

4. The facts in this affidavit come from my personal knowledge, investigation and observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

5. *Overview.* ATF is conducting a joint investigation with the Connecticut State Police Fire and Explosion Investigation Unit ("CSP-FEIU") and the South Windsor Police Department into suspected arson and insurance fraud stemming from multiple fires involving properties belonging to ▆▆▆▆▆▆▆ from 2011 to 2018. In particular, the investigation involves suspected violations of 18 U.S.C.

2

§§ 371 (Conspiracy), 844(h) (Use of Fire in Furtherance of a Felony), 844(i) (Torching a Structure), and 1343 (Wire Fraud) (collectively, the "Subject Offenses").

6. Investigators have identified fires involving ▮'s properties that occurred on or about, among other dates, September 4, 2011; March 2, 2016; February 9, 2017; April 7, 2017; August 5, 2017; and March 20, 2018 (collectively, the "Subject Fires"). In each instance, ▮ owned the property either in his own name or through a corporate entity. In several instances, Accelerant Detection Canines alerted to the probable presence of ignitable liquids. Samples from these fires are pending laboratory analysis for confirmation and additional information.

7. Investigators have further determined that, for several of the Subject Fires, insurance claims were filed with insurance providers that are headquartered outside of Connecticut.

8. *The March 20, 2018 Fire.* The applied-for search warrants relate specifically to the March 20, 2018. This fire occurred at ▮'s home at ▮ ▮, South Windsor, Connecticut. ▮'s home is in a residential neighborhood. The fire was reported at approximately 2:50 a.m. I know from my investigation that ▮ and his immediate family were not present in Connecticut at the time. During an on-site examination, investigators were unable to determine an origin and cause of the fire due, in part, to the severity of the damage and the extent of the structure's destruction. The fire is currently classified as "Undetermined."

9. During the investigation of the March 20, 2018 fire, several debris samples were identified and submitted to the State of Connecticut, Department of Emergency Services and Public Protection, Division of Scientific Services for testing. The resulting laboratory report indicated the presence of a "medium petroleum distillate" ("MPD") in one of the samples. Examples of MPDs include, but are not limited to, some charcoal starters, some paint and stain thinners and solvents, some wood staining products, and other specialty application solvents and thinners. Based on my training, experience, and participation in this and other investigations, I know that MPDs can be used as ignitable fluids in an attempt to hasten the growth and development of a fire, and the presence of an MPD warrants further investigation.

10. *Cellular Towers.* I am applying for the requested search warrants to help identify anyone who may have been a witness to, or involved in setting, the March 20, 2018 fire. More specifically, the applied-for warrants will help to determine whether any cellular telephones were active in the immediate vicinity of the fire. Given the timing of the fire (which, as noted, was reported at approximately 2:50 a.m.), I expect that relatively few cellular telephones were active in the area around that time. Moreover, given the extent of the damage, I expect that anyone whose cellular telephone *was* active in the area at the time would have seen the fire and have information regarding its origin. To the extent that anyone in the vicinity was involved in setting the fire, I also know from my training and experience that persons contemplating criminal actions often use their

cellular telephones around the time of their criminal actions for various purposes, including to communicate with co-conspirators.

11. I have learned, through my training and experience that cellular telephones have become an essential part of the average person's daily activities, and the overwhelming majority of people carry cellular telephones with them wherever they go. In addition, I know that incoming communications to a cellular telephone, such as an incoming voice call, text message, or data transaction, does not require any action to be taken by the person in possession of the telephone.

12. In my training and experience, I have learned that the Service Providers are companies that provide cellular communications service to the general public. In order to provide this service, the Service Providers maintain antenna towers ("cell towers") that serve and provide cellular service to specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data. When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it.

13. Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number and one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a

Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

14. Based on my training and experience, I know that cellular providers, routinely and in their regular course of business maintain historical cell tower log information, including records identifying wireless communications that were transmitted through a particular cell tower. For each communication, these records may include the telephone call number and unique identifiers for the wireless device that sent or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the telephone that called or was called by the locally served wireless device); the date, time, and duration of the communication; the cell tower(s) that handled the communication as well as the "sectors" (i.e., the faces of the towers) that received a radio signal from the locally served wireless device; and the type of communication transmitted (such as telephone call or text message).

15. In sum, and as set forth herein, the information covered by the applied-for warrants will identify the cellular devices that were active in the vicinity of the May 20, 2018 fire between 10:00 p.m. and 5:00 a.m. While the fire was reported at 2:50 a.m., I know through my training and experience that a fire

requires time to develop and migrate through a structure. Additionally, I know based on my training and experience that a person who has intentionally set a fire may remain in the vicinity after the fire is set to observe the results of his or her actions and first responder activity. This information, in turn, will assist law enforcement in determining which person(s) were present surrounding the time of the fire.

## AUTHORIZATION REQUEST

16. Based on the foregoing, I request that the Court issue the proposed search warrants, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

17. I further request that the Court direct each of the Service Providers to disclose to the government any information described in Attachment B that is within its possession, custody, or control. Because the search warrants will be served on the Service Providers, who will then compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

18. I further request that the Court order that all papers in support of this application, including the affidavit and search warrants, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to

destroy or tamper with evidence, change patterns of behavior (including changing cellular telephones), notify confederates, and flee from prosecution.

_____
Kevin Mileto
Special Agent, ATF


Subscribed and sworn to before me on July 26, 2018.


/s/    _____
HON. ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## Property to be Searched

This warrant applies to records and information associated with the cellular towers providing service to ▮▮▮▮▮▮▮▮▮▮ South Windsor, Connecticut, between 10:00 p.m. (EST) on May 19, 2018, and 5:00 a.m. (EST) on May 20, 2018.

**ATTACHMENT B**

**Particular Things to be Seized**

I. **Information to be Disclosed by the Service Provider**

For each cellular tower described in Attachment A, the Service Provider named in the Search Warrant is required to disclose to the United States all records and other information (not including the contents of communications) about all communications made using the cellular tower during the corresponding timeframe listed in Attachment A, including the records that identify:

    A.    the telephone call number and unique identifiers for each wireless device in the vicinity of the tower ("the locally served wireless device") that registered with the tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");

    B.    the source and destination telephone numbers associated with each communication (including the number of the locally served wireless device and the number of the telephone that called, or was called by, the locally served wireless device);

    C.    the date, time, and duration of each communication;

    D.    the "sectors" (i.e., the faces of the towers) that received a radio signal from each locally served wireless device; and

    E.    the type of communication transmitted through the tower (such as phone call or text message).

These records should include records about communications that were initiated before or terminated after the specified time period, as long as part of the communication occurred during the relevant time period identified in Attachment A.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 18 U.S.C. §§ 371 (Conspiracy), 844(h) (Use of Fire in Furtherance of a Felony), 844(i) (Torching a Structure), and 1343 (Wire Fraud).